549 So.2d 250 (1989)
Lewis RUFFIN a/K/a Buster Brown, Appellant,
v.
STATE of Florida, Appellee.
No. 88-1054.
District Court of Appeal of Florida, Fifth District.
September 28, 1989.
*251 James B. Gibson, Public Defender and Barbara L. Condon, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee and Dee R. Ball, Asst. Atty. Gen., Daytona Beach, for appellee.
COBB, Judge.
The appellant, Lewis Ruffin, appeals his convictions for possession and sale of cocaine.
On October 21, 1987, a special police task force in the Sanford area engaged in controlled purchases of alleged cocaine. Paul James, a plain-clothes police officer, purchased from a "black male" two pieces of a rock-like substance represented to be cocaine. Thereafter, the man walked away. A video and audio machine recorded the transaction. James recalled that the man wore an orange hat, blue jeans, and a green shirt with white trim.
Immediately after the transaction, James drove his unmarked vehicle to meet with the support team, which tested the substance and determined that it was, in fact, cocaine. Thereafter, two officers (Walthers and Barnes) returned to the area where the transaction occurred and encountered Ruffin, who identified himself as "Buster Brown." Ruffin was not arrested at that time. Ruffin was arrested approximately one month later on an unrelated charge, and was ultimately identified as the seller of the cocaine to James.
At trial, Ruffin's defense was that he was not the same man as the one shown on the video selling cocaine to James. James testified that Ruffin was the man who sold him the cocaine.
The problem on appeal is that both Walthers and Barnes, as well as a third officer named Dubose, were allowed to testify, over objection, that in their opinion Ruffin was the man in the videotape. This was an invasion of the province of the jury. When factual determinations are within the realm of an ordinary juror's knowledge and experience, such determinations and the conclusions to be drawn therefrom must be made by the jury. See McGough v. State, 302 So.2d 751, 755 (Fla. 1974). Walthers, Barnes, and Dubose were not eyewitnesses to the crime, they did not have any special familiarity with Ruffin, and they were not qualified as any type of experts in identification.[1]
REVERSED AND REMANDED FOR NEW TRIAL.
DANIEL, C.J., concurs.
GOSHORN, J., dissents with opinion.
GOSHORN, Judge, dissenting.
I respectfully dissent. While agreeing that the testimony of officers Walthers and Barnes was improperly admitted, I believe their testimony was nonetheless cumulative and its introduction harmless error.
Identification by lay witness opinion testimony has long been recognized in Florida. See, e.g., Roberson v. State, 40 Fla. 509, 24 So. 474 (1898). Furthermore, opinion testimony by lay witnesses is expressly admissible under our current evidence code. § 90.701, Fla. Stat. (1987). This statute has been interpreted to allow testimony in the form of opinion by a qualified nonexpert witness to identify persons by appearance, smell, voice and handwriting. Ehrhardt, Florida Evidence § 701.1 (2d ed. 1984); Gard, Florida Evidence § 12:03 (2d ed. 1980). In point of fact, all identification testimony is opinion testimony. In every criminal trial at least one witness is asked to identify the defendant in the courtroom. Such an identification is clearly opinion testimony by a lay witness; but no one would question its admissibility. Indeed, when *252 identity is at issue, such testimony is essential.
Common experience teaches us that the appearance of a person on the street at the time of the crime and his later appearance in court, cleanly shaven, with a fresh haircut and new clothes, can be vastly different. In those situations where a defendant's appearance has arguably changed since the commission of the crime, the testimony of a lay witness who is shown to have been familiar with the appearance of the defendant at or near the time of the crime will assist the jury in deciding the question of identity. See Roberson, 24 So. at 474, ("The opinion of a witness as to the identity of a person seen by him is admissible in all cases where the witness has a previous personal acquaintance with or knowledge of such person, and bases his opinion upon such acquaintance or knowledge."); Hardie v. State, 513 So.2d 791 (Fla. 4th DCA 1987), review denied, 520 So.2d 586 (Fla. 1988). This type of lay identification testimony is helpful when a defendant's physical appearance has allegedly changed since the commission of the crime and the jury is shown a photograph or videotape of a person committing the crime (e.g., a bank surveillance photograph or videotape of an undercover drug transaction) and asked to decide whether the defendant is that person.
Had the opinion testimony of the officers in the instant case assisted the jury in determining the issue of identity, it would have been admissible. However, Walthers and Barnes, who testified that the appellant and the person on the videotape were the same individual, had no knowledge of the appellant's appearance prior to the time they viewed the videotape. The officers simply viewed the videotape and the defendant, and testified that the videotape depicted the appellant. This testimony in no way assisted the jury and invaded the province of the jury by usurping its fact-finding duty. Thus the introduction of the officers' identification testimony was error, yet harmless, because the identification testimony of the officers was cumulative to other competent evidence identifying the appellant as the perpetrator. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986) (error is harmless where there is no reasonable possibility that the error contributed to the conviction); Denmark v. State, 95 Fla. 757, 116 So. 757 (1928) (error is harmless where substantially the same matters are presented to the jury through testimony of some other witness). Accordingly, because I find the error was harmless, I would affirm appellant's judgment and sentence.
NOTES
[1] Walthers and Barnes could have properly (1) testified to the fact that they encountered Ruffin in the area shortly after the drug transaction occurred and (2) described his dress and physical appearance at that time.